IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:12-CR-88-1H

UNITED STATES OF AMERICA   )
                           )
                           )
     v.                    )
                           )                **ORDER**
                           )
STEPHEN A. LaROQUE         )

This matter is before the court on the government's post-verdict notice of possible juror misconduct and the defendant's response to the notice and combined Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33.

The Notice informed the court of the following:

> [A]s the undersigned attorney was returning a key to the court clerk's office, two jurors, accompanied by a court security officer, approached the undersigned attorney to thank the Government for its work in the case. During the short discussion that followed, one of the jurors mentioned in passing that another juror (who was not present) had conducted home Internet research regarding Subchapter S Corporations and had mentioned this fact to the assembled jury.

(Notice at 2 [DE #97].)

Based on this information, the court scheduled this matter for a status conference to be conducted under seal on Tuesday,

June 18, 2013. Prior to the scheduled hearing, the court conducted a telephone conference with Joseph B. Cheshire, V, attorney for the defendant, and Dennis Duffy, the Assistant United States Attorney representing the government in this matter. With consent of the parties, the court rescheduled this matter for hearing on June 19, 2013, at the United States Courthouse in Greenville, North Carolina. The court ordered the clerk to subpoena three of the jurors for the hearing, and the parties agreed that the court would question the jurors concerning the research allegedly conducted and shared by one of the jurors during deliberations.

Furthermore, pending further order of the court, the court ordered that neither the United States, its agents or representatives, nor the defendant, defense counsel, their representatives, or any and all other persons assisting the defense shall have any contact with the jurors concerning the trial of the above-referenced matter.

Upon their arrival at the courthouse on the day of the hearing, the subpoenaed jurors were placed in separate rooms to await their turn to testify. At the hearing, the court heard testimony first from Special Agent Diane Taggart with the Internal Revenue Service, Criminal Investigation Division. Agent Taggart was the case agent for the government throughout the trial of this matter. Agent Taggart testified that as she

2

was getting ready to leave the second floor on June 7, 2013, after the verdict had been published in this matter, she saw two of the jurors with one of the court security officers near the clerk's office where Mr. Duffy was. Agent Taggart joined the three of them (Juror Number Four, Juror Number Seven and Mr. Duffy) in the United States Attorney's Office on the second floor of the courthouse. The court security officer was not present during the conversation. The two jurors wanted to thank Mr. Duffy for what he had done during the trial and there was some general conversation about the trial. In passing, Juror Number Four mentioned that one of the jurors, Juror Number Three, had done some research the night before the verdict was reached in regard to S Corporations and that the research had "helped" him with his deliberations. Agent Taggart estimated the entire conversation lasted ten minutes. (6/19/13 Hr'g Tr. at 5-7).

Following Agent Taggart's testimony, the court called Juror Number Four to the stand. After explaining to Juror Number Four that she was not in any trouble, but that the court just needed to ask her some questions, she was sworn and answered the court's questions. Juror Number Four testified that she sought out Mr. Duffy to tell him what a good job he did during the trial. She also testified that "there was a jury member the last day of deliberations that said, which I don't know if this

3

is wrong or not, that he went online just to see what it would be like to start an S Corp. . ." (6/19/13 Hr'g Tr. at 12.) Juror Number Four identified the person mentioned as Juror Number Three. She testified that Juror Number Three said the online research "helped him to see that in order to start the business Mr. LaRoque would need to know how to -- he would need to know the rules, which went on in the trial. Things he could do and couldn't do." (6/19/13 Hr'g Tr. at 13). She testified that he did not bring any materials into the jury room, but that he mentioned the research on Friday morning right after deliberations resumed around 9:00 a.m. She also testified there was no other discussion about the research with the other jurors. The court noted that the verdict was returned by the jury around 11:00 a.m. that same morning.

The court excused Juror Number Four and called Juror Number Seven to the stand, while first advising her that she was not in any trouble and was only present to answer the court's questions. Juror Number Seven confirmed much of Juror Number Four's testimony. She testified that she agreed to go with Juror Number Four to speak with Mr. Duffy, but that Juror Number Four did most of the talking. Juror Number Seven confirmed that there was general conversation for about 15 minutes. She also testified that Juror Number Three said he had conducted some internet research "to help him understand or clarify something.

4

I didn't pay much attention to what – he was sitting at that end of the table. I know I heard him say something about a computer and he looked something up on the computer." (6/19/13 Hr'g Tr. at 21). According to Juror Number Seven, Juror Number Four indicated "I think I understand now" or "I understand better." She indicated he made this statement at the beginning of deliberations on the day the verdict was returned. She also indicated that another juror commented to Juror Number Three, "You think you got it?" or "do you understand now, [Juror Number Three]?" (6/19/13 Hr'g Tr. at 23-24).

Following Juror Number Seven's testimony, the court called Juror Number Three to the stand, also admonishing him that he was not in any trouble but the court was going to ask him some questions. After being sworn, Juror Number Three testified that he looked up the IRS instructions for filling out paperwork for taxes on the IRS website on the Thursday night recess during deliberations. He looked it up on his home computer and did not print out anything nor did he share it with any other jurors. He testified he told the other jurors he had looked up the IRS website for information on how to do the tax paperwork, the instructions for filling out the tax paperwork. He started at page one of the instructions and read all the way through. He testified that a Subchapter S corporation was included in his research. He confirmed the other jurors' testimony that his

5

comments to the jury were made first thing Friday morning. There was no further discussion of his research among the jurors. He testified that he was trying to educate himself on the subject. He testified that although he remembered the judge's instruction not to do any research on the internet, he thought that the judge was referring to research involving the specific person in the case, and he felt what he researched was "general knowledge that was available to anybody at any time because it was on the government website and it was general information, it wasn't specific to any person." (6/19/13 Hr'g Tr. at 30.)

Following the testimony of Agent Taggart and the three jurors, the court heard brief arguments from the parties and instructed the parties to file follow-up memoranda. All additional memoranda have been filed, and this matter is now ripe for ruling.

### COURT'S DISCUSSION

The Sixth Amendment provides, in pertinent part, that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI. "In essence, the right to jury trial guarantees the criminally accused a fair trial by a panel of

6

impartial, indifferent jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." United States v. Basham, 561 F.3d 302, 319 (4th Cir. 2009) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)).

In cases of third-party communication or contact with the jury, The Supreme Court has established a presumption of prejudice, known as the Remmer presumption. It provides:

> [A]ny private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Remmer v. United States, 347 U.S. 227 (1954) ("Remmer").

In this matter, there was no third-party contact, but rather independent internet research on the IRS website regarding instructions on the filing of taxes conducted by a juror. In United States v. Lawson, 677 F.3d 629 (4th Cir. 2012), a juror conducted internet research using Wikipedia to determine the meaning of the term "sponsor"—a term that was in the animal fighting statute at issue in the criminal trial. Specifically, Juror 177 used a computer at his home to do research on the term "sponsor." He printed out the Wikipedia

7

entry for the term "sponsor" and brought the printout to the jury room. He not only shared the material with the foreperson but also attempted to show the material to other jurors. However, he was stopped by a fellow juror who told him it would be inappropriate. He admitted to the court that he had both conducted research on the internet and had brought the obtained material into the jury room during deliberations. The Fourth Circuit found that the <u>Remmer</u> presumption of prejudice applied in that case, specifically holding:

> [W]e conclude this presumption likewise is applicable when a juror uses a dictionary or similar resource to research the definition of a **material word or term** at issue in a pending case.

<u>Lawson</u>, 677 F.3d at 645 (emphasis added).

In <u>Lawson</u>, the court found that the term researched was an element of the offense for which the defendant was on trial and found that "use of a dictionary definition concerning the contested element of the offense was inherently 'more than [an] innocuous' incident." <u>Basham</u>, 561 F.3d at 319. The Fourth Circuit therefore applied the <u>Remmer</u> presumption and then adopted the following factors[1] as the framework to determine whether the government has rebutted the presumption of prejudice:

---

[1] The factors adopted by the Fourth Circuit in <u>Lawson</u> were first delineated in <u>Mayhue v. St. Francis Hosp. of Wichita, Inc.</u>, 969 F.2d 919, 924 (10th Cir. 1992), and are commonly referred to as "the <u>Mayhue</u> factors."

8

(1) The importance of the word or phrase being defined to the resolution of the case;

(2) The extent to which the dictionary definition differs from the jury instructions or from the proper legal definition;

(3) The extent to which the jury discussed and emphasized the definition;

(4) The strength of the evidence and whether the jury had difficulty reaching a verdict prior to introduction of the dictionary definition; and,

(5) Any other factors that relate to a determination of prejudice.

Mayhue, 969 F.2d at 924.

In Lawson, the court, using the Mayhue factors, found that the government had not rebutted the presumption as to the animal fighting statute and granted a new trial as to those counts. The court noted that there was outside research of a material element that was shared with the other juror members shortly before the verdict was reached. The court was also particularly concerned with the unreliability of the Wikipedia site.

Turning to the instant matter, the court finds there was juror misconduct in that Juror Number Three conducted research on the internet in contravention of the instructions of the court. He did not print out anything or share the contents of his research with any of the other jurors, although he did inform them of his research. Because the outside research done by the juror related to the filing of taxes, the court finds

9

that it may have been material to Counts Eleven and Twelve. As the court is not able to say that the misinformation obtained by Juror Number Three was immaterial to those counts, the court determines that a presumption of prejudice arises. Applying the Mayhue factors, the court finds that the government has failed to rebut the presumption that arises under Remmer. On the eve of a verdict, Juror Number Three read instructions on tax filing and some information on S corporations on the IRS website. The court is unaware of whether the information researched was different than or simply cumulative of the evidence already presented at trial. Because the court is unsure of the effect this research may have had on Juror Number Three's decision and because the court finds that research on the IRS website could be material to Counts Eleven and Twelve, the court finds that the government has not rebutted the presumption that arises under the Remmer/Lawson line of cases.

However, Counts Eleven and Twelve are distinguishable from the other counts. The viewing of information on the IRS website on how to file taxes is irrelevant to Counts One through Ten of the Second Superseding Indictment. Although there was outside research conducted by a juror, it was not relevant or material to Counts One through Ten. Information on the filing of taxes and S corporations was not at issue in Counts One through Ten

10

and therefore the outside research did not taint the jury verdicts on Counts One through Ten.

## CONCLUSION

For the foregoing reasons, the court hereby sets aside the jury's verdict as to Counts Eleven and Twelve due to juror misconduct and GRANTS defendant a new trial as to Counts Eleven and Twelve. The motion for new trial is DENIED as to all other counts.

Furthermore, the court's prior order prohibiting the parties or their agents from contacting the jurors in this matter is hereby lifted. The clerk is directed to unseal the filings related to the juror misconduct issue in this matter.

This <u>1st</u> day of August 2013.

_____
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26